IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-78-3 |
| | ) | |
| DAVID POKORA, | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | |



## GOVERNMENT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR PRETRIAL DETENTION

The United States hereby respectfully submits this memorandum and attached disk containing audio exhibits in support of its request that Defendant be detained pending trial based on both risk of non-appearance and danger to the community. The Government intends to reference these audio exhibits, and other evidence, during the detention hearing. We are providing the audio exhibits now to permit the Court to review them prior to Monday's hearing.

### THE LEGAL STANDARD FOR PRETRIAL DETENTION

Pursuant to 18 U.S.C. § 3142(e), the Court shall order a defendant detained pending trial if the Court finds that no condition or combination of conditions will reasonably assure the safety of any other person or the community or that no condition or combination of conditions will reasonably assure the appearance of the defendant. Pursuant to 18 U.S.C. § 3142(f)(2), the government may move for pre-trial detention "in a case that involves – (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." The government must prove "risk of flight" by a preponderance of the evidence, and

1

danger to the community by clear and convincing evidence. *See, e.g., United States v. Himler,* 797 F.2d 156, 160-62 (3d Cir. 1986).

In determining whether there are conditions of release that will reasonably assure Defendant's appearance and the safety of any other person and the community, the Court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense involves a minor victim;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including;
>
>> a. his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> b. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial; and,
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g).

## I. FACTORS SUPPORTING PRETRIAL DETENTION

For reasons we will explain at the hearing, Defendant should be detained on three, independent grounds. First, as the pretrial service report notes, Defendant has no legal status in the United States. He therefore cannot simply be released into this country. Second, as the pretrial service report also concludes, no conditions of release will ensure that Defendant does not flee the United States back to Canada or another country, from which the United States is extremely unlikely to ever again obtain custody of him. Third, no conditions will ensure that

Defendant does not continue to pose a physical and economic danger to other persons and organizations.

### A. Defendant Has No Lawful Immigration Status in the United States

Defendant was arrested as he attempted to enter the United States from Canada at the Lewiston-Queenstown Bridge, in Niagara, New York. Defendant was paroled into the United States for purposes of prosecution. He therefore has no legal status in this country. Even if this Court were to order him released, an immigration detainer is in place, and he would be taken into ICE custody and deported back to Canada – a situation that he would no doubt welcome.

### B. Defendant Is an Extreme Flight Risk

Defendant is a Canadian citizen and the leader of an international computer hacking ring that has stolen tens of thousands of identities and intellectual property valued in the tens of millions of dollars from a number of victims, including various technology companies and the United States military. As a result of his and his co-conspirators' cybercrime activities, the conspiracy has reaped ill-gotten gains totaling into seven figures and has made contacts with cybercriminals in various countries.

Since 2011, Defendant and his co-conspirators have used stolen identities to hack into the protected computer networks of various companies and the United States Army, from which they exfiltrated highly confidential and extremely sensitive intellectual property, including copyrighted works, trade secrets and other confidential and proprietary information. They have monitored FBI communications with victim companies whose networks they retained access to after their initial intrusions were detected. They also have stolen financial information relating to the companies and some of their individual employees, going so far as to open financial accounts in the names of the victim employees and their spouses. They escalated their hacking,

cyber-espionage and data theft even after learning that they were the focus of a federal criminal investigation. As they did so, one of their members, with Defendant's knowledge, also obtained personally identifiable information about law enforcement agents and spoke of soliciting the murder of: (1) a federal magistrate judge who signed a search warrant for a co-conspirator's residence; (2) FBI agents involved in the execution of the search; and (3) co-conspirators who were believed to be cooperating with the investigation. *See* Audio Disk, "Murder Threat Against Agent 1,avi;" "Serious about killing.avi;" and "Actually Doxing.avi." (Ex. 1).

Under the instant Indictment, Defendant faces up to 20 years in federal prison, and a mandatory minimum, consecutive sentence of 2 years in prison. He will face additional charges, including additional mandatory, consecutive sentences based on his trafficking in and use of over 15,000 in stolen identities to commits acts of computer and wire fraud, among other crimes. Based on his crimes, the enormous value of the intellectual property that he and his co-conspirators stole after hacking into protected computer networks, and the financial proceeds they have reaped from their crimes, his advisory Guideline offense level is 55 (life).

Defendant has no connections to this community. He has no family, no job and no property tying him to this or any other district. He has every reason to flee back to Canada, from which the United States will encounter significant difficulty and delay in attempting to extradite him. Indeed, in one audio call with his co-conspirators, Defendant noted that he simply had to remain in Canada, the government of which would not punish him as severely as that of the United States. *See* Audio Disk, "Enforcer Extradition.avi," beginning at 1:10 (Ex. 1). Referencing extradition, Defendant told his co-conspirators: "the Canadian government would probably be a lot cooler than the U.S. government. . . . They're not going to want to put me in a really harsh

U.S. federal prison where I get raped by some murderer. . . . They know about us and they're going to come after us." *Id.*

No set of conditions can alleviate the substantial risk that Defendant will flee this country if given any opportunity to do so.

### C. Defendant Poses a Continuing Danger to Persons and Victim Companies

The indictment details Defendant and his co-conspirator's extensive hacking activities, some of which the government will detail at the hearing. By his own words, Defendant's hacking activities were much more extensive than the companies listed in the indictment. During an audio conversation recorded after Defendant and others learned that a co-conspirator's residence had been searched, Defendant expressed concern that the FBI was "looking for me" and then listed for his co-conspirators various organizations he had hacked into and stolen data from in the past month, including, but not limited to:

- "the U.S. military"
- "the Australian Department of Defense"
- "every single big company," including "Intel, AMD, Nvidia, any game company you can name, Google, Microsoft, Disney, Warner Brothers."

Defendant added: "if they notice any of this, they are going to come looking for me." *See* Gov't Disk, "every big company.avi" (Ex. 1).

As noted above, Defendant and other co-conspirators, one of whom is currently beyond the reach of the United States government, talked about soliciting the murder of fellow co-conspirators believed to be cooperating, law enforcement agents and the United States

Magistrate Judge who signed a residential search warrant in this case. *See* Audio Disk, "Murder Threat Against Agent 1,avi;" "Serious about killing.avi;" and "Actually Doxing.avi." (Ex. 1).

The government has learned from various sources that Defendant and other co-conspirators were engaged in ongoing financial crimes, generating hundreds of thousands of dollars per month by utilizing code exploits to provide unauthorized access to online gaming systems. Defendant also spoke on many occasions about making money from their illegal conduct. Just one such example of those statements, relating to the sale of stolen identities that would allow users to access protected computer networks, is included on the audio disk. *See id.* "The Plan Audio Clip.avi."

Another concerning feature of Defendant and his co-conspirator's attitude and conduct is that they discussed harming the victim companies if they were targeted for investigation or prosecution. And the concern extends beyond the actions of Defendant to the potential actions of co-conspirators and hacking sympathizers with whom he interacts. The co-conspirators, for instance, talked about doing so by releasing highly confidential and proprietary data (including source code and intellectual property relating to software and gaming systems) to the online hacking community. That data then could be used to create exploits and malware relating to the games and gaming systems, potentially resulting in identity theft and other crimes for the hundreds of millions of people who access those platforms. During the call, they specifically talked about how they could do so once a judge released them from custody pending their trials. *See id.* "FU Epic.avi." After an Australian co-conspirator's residence was searched, he threatened to release approximately 1.7 terabytes of intellectual property from victim companies online if law enforcement agents pursued their investigation of him.

This poses a serious *economic* danger to the victim companies and to individuals who may have their identities stolen. It is well established that the "concern about safety [under the Bail Reform Act should] be given a broader construction than merely danger of harm involving physical violence." *United States v. Lee*, No. 00-2002, 2000 WL 228263, at *9 (10th Cir. Feb. 29, 2000) (citing S. Rep. No. 225, 98th Cong., 2d Sess., at 13 (1984), *reprinted in* 1984 U.S.C .C.A.N. 3182, 3195); *see also United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *see also United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act]"); *United States v. King*, 849 F.2d 485, 487 n. 2 (11th Cir. 1988) ("The term 'dangerousness' as used in the Bail Reform Act of 1984, has a much broader construction than might commonly be understood in everyday parlance."). Congress thus expressly recognized that the concept of danger under Section 3142 could be "extended to nonphysical harms such as corrupting a union." *See id.* (citing 1984 U.S.C.C.A.N. at 3195-96); *cf. United States v. Slade*, No. CR-09-1492-1, at *6 (D. Ariz. June 5, 2013) ("Courts have long recognized that 'danger' in the context of § 3148 refers to unlawful conduct, with little distinction between whether the nature of the conduct is economic or physical.").

## CONCLUSION

For the foregoing reasons, and for those to be outlined at the April 14, 2014 detention hearing, the government respectfully requests that Defendant be detained pending trial.

                                                Respectfully submitted,

                                                CHARLES M. OBERLY, III
                                                United States Attorney

                                      By:  */s/ Edward J. McAndrew*
                                                Edward J. McAndrew
                                                Assistant United States Attorney

Dated:   April 11, 2014